IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BETTY KOCHASE,                    )
                                  )
                Plaintiff,        )
                                  )
vs.                               )        Case No. 07-1190-MLB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                Defendant.        )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

　　　The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

        The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

        Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

        On December 14, 2006, administrative law judge (ALJ) Melvin
B. Werner issued his decision (R. at 12-20).  Plaintiff alleged
that his disability began on February 15, 2003 (R. at 12).
Plaintiff meets the insured status requirements for disability
insurance through March 31, 2008 (R. at 14).  At step one, the

4

ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 15, 2003 (R. at 14).  At step two, the ALJ determined that plaintiff had the following severe impairments: scoliosis and degenerative disc disease of the lumber spine (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14-15).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 18).  At step five, the ALJ, based on vocational expert (VE) testimony, found that there are a significant number of jobs in the national economy which plaintiff is capable of performing (R. at 18-19).  Therefore, the ALJ concluded that plaintiff is not disabled (R. at 19).

**III.  Did the ALJ err in the weight assigned to the opinions of treating physicians when establishing plaintiff's RFC?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to

6

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his decision for the weight he ultimately assigns the

opinion.  If the ALJ rejects the opinion completely, he must then

give specific, legitimate reasons for doing so.  Watkins, 350

F.3d at 1301.

    An ALJ must evaluate every medical opinion in the record,

although the weight given to each opinion will vary according to

the relationship between the disability claimant and the medical

professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir.

2004).  In the determination of issues reserved to the

Commissioner, such as opinions regarding: whether an impairment

meets or equals a listing, plaintiff's RFC, whether a plaintiff

can do past relevant work, how age, education, and work

experience apply, and whether a plaintiff is disabled, treating

source opinions are not entitled to special significance or

7

controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

The ALJ found that plaintiff had a RFC for a restricted range of light work.  The ALJ found that plaintiff requires the ability to alternate positions standing to sitting after 60 minutes, and sitting to standing after 30 minutes.  Further, plaintiff can sit for a total of no more than 4-5 hours in an 8-hour workday.  Plaintiff can occasionally balance, stoop, kneel, crouch and crawl; plaintiff can never climb (R. at 15).

Dr. Hill, plaintiff's treating physician, provided an opinion regarding plaintiff's RFC on January 14, 2005.  Dr. Hill opined that plaintiff could stand and/or walk continuously and in an 8 hour day for 1 hour.  Dr. Hill further opined that plaintiff could sit continuously and in an 8 hour day for 1 hour (R. at 168).

Dr. Dennis, also one of plaintiff's treating physicians, provided an opinion regarding plaintiff's RFC on April 20, 2006. Dr. Dennis opined that plaintiff can stand and/or walk continuously for 15 minutes, and 2 hours in an 8 hour workday.

Dr. Dennis also opined that plaintiff could sit continuously for 15 minutes, and for less than 1 hour in an 8 hour workday (R. at 279). Dr. Dennis also indicated that plaintiff would need to lie down 3-4 times a day for 15 minutes (R. at 280).

The ALJ mentioned these opinions by Drs. Hill and Dennis, but found that the notes of neither doctor nor the longitudinal record supported such extreme limitations (R. at 16). The ALJ's detailed discussion of their medical records and the weight assigned to their opinions is as follows:

> Dr. Hill's notes reveal mild scoliosis that will not get any worse (Exhibit [3]F, p.15). Scoliosis is a curvature of the spine for which the claimant was diagnosed prior to her alleged onset date of disability. Much of Dr. Hill's treatment was in the context of "well woman" visits that revealed no back complaints (Exhibit [3]F, p.16-21). On December 29, 2003, for instance the claimant reported doing quite well. She complained of leg pain and was advised to use Motrin (Exhibit [3]F, p.21). The claimant reported doing a lot of lifting because she recently moved on March 2, 2004 (Exhibit [3]F, p.[22]). At that time she reported back pain. Dr. Hill prescribed Darvocet (Exhibit [3]F, p.22). Dr. Hill's treatment notes of March 30, 2004 indicate the claimant underwent physical therapy and reported feeling much better. The claimant reported that she had been given exercises to do at home and was doing quite well (Exhibit [3]F, p.23). There is nothing in Dr. Hill's notes to indicate pain at such a level that would limit the claimant to sitting or standing and/or walking for no more than 1 hour during an 8 hour work day. The notes indicate the claimant had some complaints that were basically controlled with conservative measures.

9

As to the opinion of Dr. Dennis, the claimant
was seen several times for acute conditions
such as ear pain, sore throat and abdominal
pain with no complaint of leg or back pain
(Exhibit 11F, p. 97-99). The claimant asked
for work up regarding Scoliosis as of August
of 2005 because of numbness down her left leg
(Exhibit 11F, p.100). On September 14, 2005,
Dr. Dennis' notes show that scoliosis was
chronic and stable. She was given a hand out
and informed that the exercises would be a
long term compensation for the scoliosis.
Additionally she was reminded of lifting and
picking up rules. Dr. Dennis noted bilateral
motor strength of 5 out 5, deep tendon
reflexes that were 2 plus bilaterally and
that the claimant's gait was normal. She had
normal sensation and negative straight leg
raising at that time (Exhibit [11]F, p.103).
On February 7, 2006, the claimant exhibited
diminished sensation o[f] the right lateral
lower leg and she was limping. There was some
diminished range of motion in the left hip.
Back x-rays were noted to show mild to
moderate scoliosis. Her condition was
worsening because of numbness in the right
foot (Exhibit [11]F, p.107). The notes of Dr.
Dennis reflect some diminished function but
nothing inconsistent with an ability to do
light work with the requirement that the
claimant be able to alternate positions from
standing after 60 minutes and after sitting
for 30 minutes. In addition the claimant
would need to sit no more than 4-5 hours in
an 8 hour work day...

The records of Dr. Hill and Dr. Dennis do not
support the extreme limitations they posit in
the Medical Source Statements. The
longitudinal record does not support
limitations any more limiting than the
residual functional capacity in this
decision. The opinion of the State agency
physician's is less restrictive than the
residual functional capacity in this
decision. There is no evidence in the
treatment notes supporting that the claimant
should be restricted to sit, stand and/or

walk for 1 hour in an 8 hour work day or that
she could only sit for 15 minutes at a time.
In addition, the claimant's testimony
supports the residual functional capacity in
this decision. The claimant testified that
she can walk around normally on good days
about 3 days per week. On bad days (if she is
too active) she has more pain. The claimant
testified that she often rests in the morning
by lying on the couch after doing
housekeeping then rests again in the
afternoon. She testified that she can
occasionally fish or go to a movie and she
can stand for about an hour then sit for
about 30 minutes during those activities.
This is plausible considering the entire
record. The claimant's testimony regarding
her limitations in light of the consultative
examinations and opinion evidence of the
lower level outweighs the extreme limitations
opined by Drs. Hill and Dennis. While the
latter have or had a treating relationship
with the claimant their opinions are not
accorded controlling weight for this reason
although their clinical findings are noted
(CFR 20 4 I6. 927 & CFR 20 404.1527 & SSR
96-2p).

(R. at 16-18).

The record also contains RFC opinions by two state agency
physicians, dated November 23, 2004 (R. at 198-206), and March
30, 2005 (R. at 207-214).  The ALJ considered their opinions, but
found that, based upon all the medical evidence and other
evidence, including plaintiff's testimony and evidence which was
not available to the state agency medical consultants,
plaintiff's functional capacity (as set forth in the ALJ
decision) is more limiting (R. at 17).

As noted above, treating source opinions on an issue

reserved to the Commissioner, including a claimant's RFC, is not entitled to special significance or controlling weight.  However, such opinions must be carefully considered by the ALJ.  The ALJ did give careful consideration to the RFC opinions expressed by the two treating physicians, but found that the medical records and plaintiff's testimony do not support their opinions for the reasons set forth in the ALJ's decision, see supra pp.9-11.

Plaintiff argues that the ALJ's determination that plaintiff could still perform light work was based on nothing but his own medical opinion, and that there is no medical basis for finding that plaintiff could perform light work for an 8 hour day (Doc. 8 at 10).  However, both state agency RFC assessments opined that plaintiff could perform light work for an 8 hour day (R. at 199, 208).[1]  The second state agency assessment, performed by Dr. Legler on March 30, 2005, included a brief summary of some of the medical evidence and statements by the plaintiff that formed the basis for his opinions (R. at 208-209, 212), including the following:

> The claimant provides transportation for her
> son to school and back.  She performs general
> exercises and walking.  She is independent in
> self care.  She cooks one or two hours per

---

[1]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with pushing and pulling of arm or leg controls.  20 C.F.R. § 1567(b).

day.  She performs household chores such as
dusting, sweeping, running vacuum cleaner and
doing laundry.  She shops usually 2 or 3
hours per week.  She leaves the home every
day for destinations such as school, Good
Will, grocery store, church events and
visiting neighbors.  She relates that she is
able to walk about 4 blocks and then needs a
5 or 10 minute break.

(R. at 212).  Dr. Legler then commented on the RFC opinions

expressed by Dr. Mills:

Crystal Mills MD did send a medical source
statement dated 1/21/2005.  However, the
restrictions placed on the claimant's
activities were not supported by clinical
findings and indeed, the claimant's daily
activities exceeded her doctor's
restrictions.

(R. at 214).[2]  Thus, the ALJ's RFC determination that plaintiff

could perform light work is supported by the opinions of both

state agency consultative physicians.  Furthermore, the postural

limitations set forth by the ALJ match the postural limitations

set forth by Dr. Legler (R. at 15, 209).  Thus, a medical basis

does exist in the record for finding that plaintiff can perform

light work.

The ALJ determined that the medical records and plaintiff's

own testimony show that she is not as limited in sitting,

standing, and/or walking as indicated by Dr. Hill and Dr. Dennis.

_____

[2]In contrast to Dr. Legler's report which included a
narrative discussion of the evidence and the basis for his RFC
opinions, neither Dr. Hill nor Dr. Dennis provided any narrative
discussion or explanation for their RFC opinions (R. at 207-214,
168-169, 279-280).

Plaintiff testified on September 19, 2006 that she can maintain an activity for 2-3 hours out of the day before she needs to stop (R. at 298).  Plaintiff testified that she can walk around normally on good days, or about 3 days per week (R. at 301). Plaintiff stated that she does housekeeping and then rests; she lies down a lot of times on the couch and watches TV.  Plaintiff indicated that she is up an hour or two before her son goes to school, and then is up until about 12:00 (R. at 308).  Plaintiff testified she rests in the afternoon.  She does not do a whole lot of walking, only about 1-2 blocks.  Plaintiff walks to the corner to meet up with her son, and walks home with him (R. at 308).  Plaintiff also testified that she can usually stand for an hour and sit for 30 minutes (R. at 310).

On September 17, 2004, plaintiff indicated on a written form that she can walk 5-6 blocks before needing to stop and rest, and that, with medication for pain, can maintain walking (R. at 114). On a form on February 16, 2005, plaintiff stated that she can walk about 4 blocks before resting, and needs to rest for 5-10 minutes before walking again (R. at 122).

Dr. Hill opined that plaintiff could stand and/or walk for 1 hour a day, and sit for 1 hour a day.  Dr. Dennis opined that plaintiff could stand and/or walk for 15 minutes continuously, and 2 hours in an 8 hour workday; and plaintiff could sit continuously for 15 minutes, and for less than 1 hour in an 8

14

hour workday.  The ALJ concluded that the medical records and plaintiff's activities do not support restrictions as limiting as those set forth by Dr. Hill and Dr. Dennis.  Dr. Legler stated that the RFC opinions by Dr. Mills were not supported by clinical findings and that plaintiff's daily activities exceeded the restrictions opined by Dr. Mills (R. at 214).  Plaintiff's testimony and statements also could support a finding that plaintiff has a level of activity beyond the limitations opined by Dr. Mills and Dr. Dennis.  Although plaintiff presents evidence which could support a finding of greater RFC limitations than those set forth by the ALJ, the court can neither reweigh the evidence nor substitute its judgment for that of the agency.  White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the evidence may have supported contrary findings, the court will not displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ stated that he gave plaintiff some benefit of the doubt concerning her testimony that she needs to alternate positions and needs to lie down during the day to relieve pain (R. at 15).  Thus, the ALJ did not merely adopt the RFC limitations set forth by Dr. Legler, but included limitations that plaintiff be able to alternate from standing to sitting

15

after 60 minutes and sitting to standing after 30 minutes.
Sitting was also limited to 4-5 hours in an 8 hour workday.  The
first two limitations are consistent with plaintiff's testimony
that she can usually stand for 1 hour and sit for 30 minutes at
one time (R. at 310).

In regards to plaintiff's testimony that she needs to lie
down to relieve pain, the ALJ noted that plaintiff indicated she
often needed to rest once in the morning and once in the
afternoon by lying down (R. at 15, 18).  Dr. Dennis opined that
plaintiff needs to lie down 3-4 times a day for 15 minutes to
relieve pain (R. at 280).  In his questions to the vocational
expert (VE), the ALJ asked about the impact on plaintiff's
ability to work if she required the ability to lie down 3 times
during an 8 hour day for 15 minutes.  The VE stated that breaks
are afforded mid-morning for 15 minutes, lunch for 30-60 minutes,
and mid-afternoon for 15 minutes.  The VE further stated that
employers don't usually dictate whether a person may or may not
lie down, but noted that there may not be a place to lie down, in
which case work would be precluded (R. at 155).  The VE then set
forth two light and two sedentary jobs that plaintiff could
perform with the RFC limitations set forth by the ALJ (R. at 155-
156).  The ALJ found that, based on this testimony by the VE,
there would generally be work available except in locations where
there was no place to actually lie down (R. at 15).  The ALJ

16

relied on the VE findings and concluded that plaintiff could perform other jobs in the national economy which exist in significant numbers (R. at 18-19).

The court finds that the ALJ has provided a sufficient narrative discussion in support of his RFC findings, relying on medical evidence and plaintiff's own testimony.  The ALJ has also provided a detailed and sufficient explanation for not adopting the more restrictive RFC limitations opined by Dr. Hill and Dr. Dennis.  In the case of <u>Taylor v. Astrue</u>, 2008 WL 467807 at *5 (10th Cir. Feb. 22, 2008), the ALJ could not accept the extreme limitations set forth by the treating physician because they were unsupported by objective evidence and were inconsistent with claimant's activities of daily living.  The opinions of the treating physician also conflicted with the RFC findings made by the state agency consulting physician.  2008 WL 467807 at *2-3. The court in <u>Taylor</u> stated that they did not mean to imply this was a clear-cut case, but stated that it is not the province of the court to reweigh the evidence.  The court held that the ALJ relied on sufficient evidence in rejecting the opinions of the treating physician concerning claimant's functional limitations, and further held that the ALJ's RFC determination was supported by substantial evidence.  2008 WL 467807 at *5-6.  As in <u>Taylor</u>, the evidence in this case (Kochase) is not clear-cut.  However, given that the ALJ has provided a sufficient narrative discussion

17

in support of his RFC findings, and has provided a detailed and sufficient explanation for not adopting the more restrictive RFC limitations opined by treating physicians, Drs. Hill and Dennis, the decision of the ALJ should be affirmed.

**IV.  Did the ALJ err in his credibility analysis?**

The framework for the proper analysis of evidence of pain is that the Commissioner must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. For example, an impairment likely to produce some back pain may reasonably be expected to produce severe back pain in a particular claimant.  Luna, 834 F.2d at 164.  Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.  Direct medical evidence of the cause and effect relationship between the

impairment and the degree of claimant's subjective complaints
need not be produced.  <u>Luna</u>, 834 F.2d at 165.  The absence of an
objective medical basis for the degree of severity of pain may
affect the weight to be given to the claimant's subjective
allegations of pain, but a lack of objective corroboration of the
pain's severity cannot justify disregarding those allegations.
When determining the credibility of pain testimony the ALJ should
consider the levels of medication and their effectiveness, the
extensiveness of the attempts (medical or nonmedical) to obtain
relief, the frequency of medical contacts, the nature of daily
activities, subjective measures of credibility that are
peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the
consistency or compatibility of nonmedical testimony with
objective medical evidence.  <u>Thompson</u>, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not
substitute its discretion for that of the agency.  Credibility
determinations are peculiarly the province of the finder of fact,
and a court will not upset such determinations when supported by
substantial evidence.  However, findings as to credibility should
be closely and affirmatively linked to substantial evidence and
not just a conclusion in the guise of findings.  <u>Kepler v.
Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ
cannot ignore evidence favorable to the plaintiff.  <u>Owen v.</u>

19

Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The only credibility finding by the ALJ which is not supported by the evidence is his finding that plaintiff had not followed advice and had surgery, which, according to the ALJ, is some evidence that her pain is not disabling (R. at 16). However, the medical records from a consultative physician

indicated the findings and options were discussed with the plaintiff, as follows:

> From a conservative standpoint, she may benefit from epidural steroid injections in the lumber spine...From a surgical standpoint, she may benefit from an L4-L5 interbody fusion and posterior instrumentation and fusion.  Ms. Kochase does not want to consider any type of surgical procedure at this time.

(R. at 275).  Plaintiff testified that she refused the surgery option because the doctor told her there was no guarantee it would even help, and she chose the epidural option instead (R. at 300).  The medical notes, which were confirmed in plaintiff's testimony, is that plaintiff was provided with two treatment options, indicating with both options that they "may" help. Thus, it was not entirely accurate for the ALJ to state that plaintiff did not follow advice by not having surgery, or that her hesitancy is some evidence that her pain is not disabling.

Because a credibility assessment requires consideration of all the factors in combination, when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, this court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility determination. Romero v. Apfel, 221 F.3d 1352 (table), 2000 WL 985853 at *4 (10th Cir. July 18, 2000);  Robinson v. Apfel, 172 F.3d 63 (table), 1999 WL 74025 at *3 (10th Cir. Feb. 17, 1999);

Bakalarski v. Apfel, 131 F.3d 151 (table), 1997 WL 748653 at *3
(10th Cir. Dec. 3, 1997).  However, in this case, the court finds
only one error in the ALJ's credibility analysis.  The remainder
of the ALJ's credibility analysis is closely and affirmatively
linked to substantial evidence, including plaintiff's own
testimony of her physical abilities and limitations, and the
medical record (R. at 15-18).  As Dr. Legler indicated in his
report, plaintiff's daily activities exceeded the limitations set
forth by Dr. Mills (R. at 214).  Dr. Legler also indicated that
plaintiff's allegations of pain are credible given her MDI
(medically determinable impairment), but they do not substantiate
limitations to the degree alleged by the plaintiff (R. at 212).

     After examining the record as a whole, and reviewing the
findings of the ALJ, the court finds that the balance of the
ALJ's credibility analysis, even after consideration of the one
error in that analysis by the ALJ, is nonetheless closely and
affirmatively linked to substantial evidence.  See Branum v.
Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)("While we have
some concerns regarding the ALJ's reliance on plaintiff's alleged
failure to follow a weight loss program and her performance of
certain minimal household chores, we conclude that the balance of
the ALJ's credibility analysis is supported by substantial
evidence in the record.")  The court will not reweigh the
evidence or substitute its judgment for that of the Commissioner.

<u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 7, 2008.


                         s/John Thomas Reid
                         JOHN THOMAS REID
                         United States Magistrate Judge

23